J-S48008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANTAE JACQUES | : | |
| | : | |
| Appellant | : | No. 527 EDA 2019 |

Appeal from the PCRA Order Entered February 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000963-2013

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 25, 2019**

Dantae Jacques appeals from the February 15, 2019 order dismissing

his PCRA petition without a hearing.  We affirm.

Appellant was convicted by a jury of second-degree murder and robbery

based on the following events, which were summarized by this Court on direct

appeal:

> On October 18, 2012, Appellant arranged to purchase one pound
> of marijuana from the victim, Raviya Roeuth.  Appellant entered
> the backseat of a car driven by Mr. Roeuth at a predetermined
> location, while another individual, Jony Sam, sat in the passenger
> seat.
>
> From the rear seat of the vehicle, Appellant fatally shot Mr.
> Roeuth, and severely injured Mr. Sam, who sustained injuries to
> his neck, wrist, and the side of his face.  Appellant unlocked the
> trunk of the car and stole the marijuana.  He then fled the scene
> of the crime.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Subsequently, a search warrant for Appellant's residence was issued. Officers executed the warrant at 6 a.m. on November 7, 2012, and seized a large quantity of marijuana and a scale. Appellant was placed under arrest and transferred to the Philadelphia homicide unit. He remained in an interrogation room with suspects from other investigations throughout the course of that day, and the next. During this interval, Appellant was provided with breakfast, cheese sandwiches, beverages, and a cheesesteak. He had access to a bathroom and slept in the interrogation room.

Detective Brian Peters spoke with Appellant numerous times while he remained in police custody. At approximately 4 p.m. on November 7, 2012, Detective Peters informed Appellant of his *Miranda* rights. Appellant did not request an attorney at this time, but chose to speak with the detective, who memorialized their conversation with handwritten notes. Later that evening, Appellant again waived his rights, and the detective conducted a formal interview. Detective Peters created a written statement based on Appellant's statements, which Appellant reviewed and signed. The interview ended at 12:32 a.m. on November 8, 2012.

Following this interview, Detective Peters investigated the averments attested to by Appellant in his statement. Noting inconsistencies in that statement, Detective Peters conducted a second interview with Appellant during the morning and early afternoon of November 8, 2012. Appellant once again waived his rights and confessed, in a written statement, to the shootings of Mr. Roeuth and Mr. Sam.

*Commonwealth v. Jacques*, 156 A.3d 337 (Pa.Super. 2016) (unpublished memorandum at 1-3).

Appellant filed a pre-trial motion to suppress his confession. Following a hearing, the court denied Appellant's motion. A jury convicted Appellant of the abovementioned crimes, and the court sentenced him to life in prison without possibility of parole.

On direct appeal, Appellant challenged the denial of his motion to suppress. We affirmed the suppression court's finding that the statements were voluntarily given. *Jacques*, *supra*. The Supreme Court denied *allocatur* on December 28, 2016. *Commonwealth v. Jacques*, ___A.3d___, 2016 Pa. LEXIS 2944 (Pa. 2016).

On January 23, 2018, Appellant filed a timely *pro se* PCRA petition for post-conviction relief, and counsel was appointed. Counsel filed an amended PCRA petition on Appellant's behalf. The Commonwealth moved to dismiss the petition without a hearing as the petitioner has failed to present evidence or an appropriate offer of proof demonstrating the existence of genuine issues of material fact, citing Pa.R.Crim.P. 909(B), and *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013).[1] Commonwealth's brief at 14. The PCRA court sent Pa.R.Crim.P. 907 notice to Appellant of its intention to dismiss the petition without a hearing because the issues were without merit. When Appellant did not file a response, the PCRA court denied the petition by order of February 15, 2019. Appellant timely filed this appeal raising three issues for our review:

> 1. Did the PCRA court err in dismissing Appellant's PCRA Petition without a hearing because trial/direct appeal counsel was ineffective for failing to properly litigate Appellant's suppression issue in relation to Appellant's confession to homicide detectives?

---

[1] The Commonwealth's reliance upon Pa.R.Crim.P. 909(B) and *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013), is inapt as that Rule applies only to post-conviction proceedings in death penalty cases, and this is not such a case.

2. Did the PCRA court err in dismissing Appellant's PCRA Petition without a hearing because trial counsel was ineffective for allowing Appellant's prior conviction and incarceration to be elicited at trial?

3. Did the PCRA court err in dismissing Appellant's PCRA Petition without a hearing because trial counsel was ineffective for introducing character evidence when counsel knew that such evidence would be subject to impeachment with a prior robbery conviction?

Appellant's brief at 4.

In reviewing the denial of PCRA relief, "this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Andrews*, 158 A.3d 1260, 1263 (Pa.Super. 2017). All three of Appellant's claims implicate ineffective assistance of counsel. We start from the premise that counsel's performance is presumed to be constitutionally adequate. In order to prevail on an ineffectiveness claim, the petitioner must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *See Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009) (citing 42 Pa.C.S. § 9543(a)(2)(ii)); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).

A finding of "prejudice" requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, *supra* at 703 (citations omitted). When it is clear that an appellant has failed to meet the

- 4 -

prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether a petitioner met the first two prongs. ***See Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa.Super. 2003) (*en banc*).

Finally, a PCRA petitioner is not automatically entitled to an evidentiary hearing.

> "It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing."

***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa.Super. 2014) (citations omitted).

Appellant alleges first that trial and appellate counsel were ineffective because they did not challenge the confession based on "a crucial issue of undisputed fact," *i.e.*, that Appellant refused to speak to Detective Peters on November 8, 2012, and that he did not receive **Miranda** warnings at that time. **See** Appellant's brief at 11. Appellant contends that instead of honoring his right to remain silent, Detective Peters sent in Detective Howard Peterman, who did not Mirandize him before he confessed to the crimes. Instead, he contends, both trial and appellate counsel dwelt on issues such as sleep and nourishment in arguing that the confession was not voluntary.

The record does not support the factual predicate of Appellant's ineffectiveness claim. Trial counsel did seek to suppress Appellant's confession on the ground that he invoked his right to counsel and right to

remain silent, but that his rights were ignored. Trial counsel argued, "[Appellant] repeatedly asserted his right to counsel and said he did not want to talk any more" but the "Detectives continued to badger him." N.T. Motion Vol. I, 7/3/14, at 30.

In support of that claim, Appellant testified that he told Detective Peters that he needed a lawyer. *Id*. at 147. According to Appellant, Detective Peters left the room, and Detective Peterman came in and began to question him. Appellant testified at the suppression hearing that he refused to speak to Detective Peterman, and asked for Detective Peters. When Detective Peters returned, Appellant testified that he again asked to make a phone call to ask his mother to get him a lawyer. *Id*.

Trial counsel contended, based in large part on the foregoing testimony offered by Appellant that, prior to the November 8, 2012 statement, Appellant "asserted his right to counsel several times and they continued to question him." *Id*. at 216. Counsel argued that the waiver was invalid and that Appellant's statement was obtained after he had invoked his right to an attorney should be suppressed. *Id*. at 217. Hence, the record refutes Appellant's premise that trial counsel failed to present these facts as the basis for suppression.

As the PCRA court noted, it "heard [Appellant's] assertion during the suppression hearing that he invoked his right to remain silent." PCRA Court Opinion, 4/5/19, at 9. It considered that testimony, together with conflicting

testimony offered by the Commonwealth. Despite Appellant's testimony, the suppression court found that Appellant was given his *Miranda* warnings, and he waived them prior to giving his statement to Detective Peters on November 8, 2012. *Id*. The court found further that Appellant "did, in fact receive *Miranda* warnings prior to each statement given." N.T. Motion Vol. I, 7/3/14, at 228. Considering the totality of the circumstances, the court found no violation of Appellant's rights under *Miranda*. *Id*.[2] We find Appellant's claim that trial counsel was ineffective in this regard meritless.

Nor do we find any merit in Appellant's claim that direct appeal counsel was ineffective because he failed to argue the facts surrounding Detective Peterman's involvement after Appellant refused to talk to Detective Peters. Appellant fails to demonstrate how the outcome of the appeal would have been different if appellate counsel had focused on this basis for suppressing the confession, rather than on whether the confession was involuntary and coerced. The PCRA court found that he received *Miranda* warnings, and waived his right to an attorney prior to confessing to the murder. No relief is due.

---

[2] Testimony was adduced by the Commonwealth that Appellant was provided with *Miranda* warnings prior to each interrogation, that "he never asked for an attorney," and "[h]e never asked not to be questioned." N.T. Motion Vol. I, 7/3/14, at 101. In addition, signed waivers were introduced into evidence. The suppression court credited this evidence.

Appellant's second ineffectiveness claim relates to counsel's failure to file a motion *in limine*, or object at trial, to exclude evidence that he had been "locked up" at Glen Mills. Appellant's brief at 15. The evidence was admitted as part of his confession.[3] Appellant concedes that the evidence was relevant to show that he knew the victim, but claims, without more, that "there was definitely a manner in which that relationship could have been shown without reference to being locked up in an institution." *Id*.

The Commonwealth counters that the evidence was admissible for a proper purpose: to show that he and the victim knew each other, and why the victim would have trusted Appellant enough to allow Appellant to enter his car. Commonwealth's brief at 23. The Commonwealth also points out that it did not exploit the passing reference. Furthermore, the Commonwealth cites ***Commonwealth v. Adams-Smith***, 209 A.3d 1011 (Pa.Super. 2019), for the proposition that it was not required to sanitize its case by removing facts that are part of its history and development. Commonwealth's brief at 23. In short, the Commonwealth contends that Appellant cannot demonstrate that an objection would have been sustained, or that Appellant was prejudiced by counsel's alleged failure in this regard. *Id*. at 24. Moreover, even assuming a timely objection would have been sustained, the Commonwealth points out

---

[3] The actual reference to Appellant's stay at Glen Hills did not state that he was "locked up." It consisted of the following: "I met [Roeuth] up at Glen Mills. We were in the same unit for about a year." N.T. (Jury), 7/16/14, at 142.

that the jury already had been told that Appellant would testify in his own defense. Thus, it was inevitable that his adjudication for robbery as a juvenile would have been revealed on cross-examination. *Id*. Finally, given Appellant's confession and the strong evidence corroborating his guilt, the Commonwealth argues that there is no reasonable probability that had counsel successfully objected, the result would have been different. *Id*. at 24-25.

The PCRA court noted that even Appellant conceded that there was a proper purpose for the admission of such Rule 404(b) evidence, and Appellant did not establish that it was unfairly prejudicial in this case. Since the evidence was relevant, and not admitted to show that Appellant possessed a bad character or a propensity to commit crimes, it was generally admissible. PCRA Court Opinion, 4/5/19, at 12. Furthermore, Appellant failed to suggest an alternative means for advising the jury about the relationship. Echoing the Commonwealth's position, the PCRA court stated that it was aware that Appellant intended to testify and that his prior robbery adjudication would have been a basis for cross-examination. It concluded that trial counsel could not be deemed ineffective for failing to file a motion or make an objection that was futile. *Id*. (citing *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006). We find no error or abuse of discretion, and hence, no relief is due on this claim.

Finally, Appellant contends that trial counsel was ineffective in presenting a character witness to testify to his reputation for non-violence.

He claims that trial counsel had no reasonable basis for such a strategy, as it resulted in the jury learning that he had committed a prior robbery. Appellant's brief at 12-13.

Again, Appellant's claim lacks merit. The jury heard that Appellant had a prior adjudication that resulted in him being placed in a juvenile facility where he met the murder victim. Trial counsel mitigated the prejudicial effect of that evidence by eliciting from Appellant's mother on redirect examination that the prior adjudication was for a robbery that occurred when Appellant was thirteen years old and involved a bicycle. As the PCRA court explained, "the details of the crime as stated sounded like a kid being a kid rather than a violent person who gets sent to a juvenile institution." PCRA Court Opinion, 4/5/19, at 13. The court reasoned that since trial counsel could not prevent the jury from hearing that Appellant had been detained as a juvenile, defense counsel "framed [Appellant's] record in a way that he sounded like a child rather than a hardened offender." *Id*. at 14. Moreover, counsel's strategy permitted Appellant to request a jury instruction on good character and nonviolence. *Id*. Hence, the PCRA court found no support for Appellant's claim that trial counsel lacked a reasonable basis for his decision. We find no error or abuse of discretion. No relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/25/19